Hein vs. The Village of Fairchild.

HEIN, Respondent, vs. THE VILLAGE OF FAIRCHILD, Appellant.

*February 26 — March 16, 1894.*

*Injury caused by defective street: Notice: Court and jury.*

1. A notice of injury, given pursuant to sec. 1339, R. S., is sufficient, though it misnames a street, if it directs the authorities clearly and unmistakably to the exact place of the accident.
2. An admission on the trial that "*proper* notice was given" is, in effect, that a *sufficient* notice was given.
3. A ditch two or three feet deep had been dug or left along the center of a village street, immediately adjoining the graded track, which was barely wide enough for teams to pass each other. An old wagon road, which, though not a public highway, had until recently been much traveled, joined the street on the side opposite the graded track and ended in the ditch. No barriers had been erected. In an action for an injury to a person driving along the street, alleged to have been caused by the ditch, evidence of the above facts is *held* to support a verdict to the effect that the ditch constituted an insufficiency or want of repair in the street.
4. An expression of opinion by the court, in such case, as to where barriers should be placed at the ditch, as a warning or defense to travelers, was not a material error.

Hein vs. The Village of Fairchild.

APPEAL from the Circuit Court for *Eau Claire* County.

Action for personal injuries alleged to have been caused by the insufficiency or want of repair of a street in the defendant village. The facts are stated in the opinion. The defendant appeals from a judgment in favor of the plaintiff.

For the appellant there was a brief by *M. Griffin*, attorney, and *Quarles, Spence & Quarles*, of counsel, and oral argument by *J. V. Quarles*. To the point that when the plaintiff left the traveled track she assumed all the perils involved in such a course, they cited *Shepardson v. Colerain*, 13 Met. 55; *Smith v. Wendell*, 7 Cush. 498; *Kellogg v. Northampton*, 4 Gray, 65–69; *Hardwood v. Oakham*, 152 Mass. 427; *Keyes v. Marcellus*, 50 Mich. 439–441; *Kelly v. Fond du Lac*, 29 Wis. 439; *Wheeler v. Westport*, 30 id. 407; *Hawes v. Fox Lake*, 33 id. 442; *Goeltz v. Ashland*, 75 id. 645.

For the respondent there was a brief by *V. W. James*, attorney, and *T. F. Frawley*, of counsel, and oral argument by *Mr. Frawley*.

ORTON, C. J. The main facts of this case, as they appear by the testimony on behalf of the plaintiff, are as follows:

In the village of *Fairchild* there is a street running east and west, and another street running north and south, and, a short distance east from the point where they intersect at right angles, the Omaha Railroad runs northwest and southeast, crossing both of said streets, and leaving a triangular piece of ground, bounded on the northeast by the railroad, on the south by the east and west street, and on the west by the north and south street. A short distance southwest of the railroad, and parallel to it, there is a street called "Railway Avenue," which intersects the north and south street in such a way that, if it were continued on to intersect the east and west street, it would cross said tri-

Hein vs. The Village of Fairchild.

angular piece of ground. On that line there was an old wagon road across that piece of ground, which intersected the east and west street. The travel coming down Railway avenue was in the habit of taking the straight cut of the old wagon road, rather than to go around the corner where the east and west and north and south streets intersect. That wagon road had been so used for many years, and sometimes worked as a street, but it was not a laid-out street, and the ground was private property. The ground where the east and west street was laid out was low and swampy, and it seems to have been thought best not to

grade the whole street and make it fit for travel, so only a track was graded south of the center of the street, about fourteen feet wide. This track was graded up towards the center from each side, which left a ditch on the north side of the track about two or three feet deep, along the center line of the laid-out street. The said wagon road intersected the north line of this graded track, or at the ditch which was in the center of the laid-out street. The grading which caused and left the ditch was done in the year 1888, not long before the accident complained of.

On the 25th day of June, 1888, the plaintiff, a lady about forty-five years of age, and her daughter, about twenty years of age, and another lady, came into the village on the east and west street, riding in a light democrat wagon drawn by an old span of horses which had been owned by the plaintiff's husband about fourteen years. The wagon had springs under the box, and a spring seat in which the three were riding, and the daughter sat in the middle and drove the team. As they came to the railroad, they stopped and waited for a train to pass, and there was an engine standing on the track near by. They crossed over the railroad, and drove on west, on the east and west street, the team going on a trot. When they came near the junction of the old wagon road, the engine on the railroad blew off steam, which frightened the horses, and they turned to the right, and jumped the ditch in the direction of the wagon road, and when the wagon struck the ditch it threw the plaintiff out on the ground and injured her severely and permanently. The daughter held the lines tightly and evenly, and tried to keep the horses on the road, and soon after turned them back into the traveled track, and only lost control of them for a moment, if at all, when they jumped the ditch. The traveled track is very close to the ditch. It seems to have been an instantaneous swerving of the team to the right, while they were trotting, caused by the blow-

ing off of steam from the engine near by, which brought
them across the ditch and in the direction of the old road,
and as instantly the driver brought them back to the trav-
eled track.   The travel on this east and west track was
along and very near the ditch, so that a slight shying or
diversion of the team, or any team, would bring them into
the ditch.   These facts are proved by the testimony of the
three persons in the wagon, and of others of the plaintiff's
witnesses.

These are the main facts upon which the jury found a
general verdict for the plaintiff for $2,500 damages.   There
was a motion to direct a verdict and a motion for a new
trial on behalf of the defendant, both denied, upon which
this court is asked to review the evidence and pass upon
the merits of the case.

1. It is contended by the learned counsel of the appel-
lant that there was a material variance between the place
of the accident as proved, and that described in the notice
and complaint.   It is true that in some respects and par-
ticulars there was a variance.   Huron street was men-
tioned for the east and west street, and there was a differ-
ence in distances.   But both the notice and the complaint
describe the place where the accident occurred as where
Huron street intersects with a continuance of Railroad
avenue.   What was called a continuance of Railroad ave-
nue was the old wagon road above described, and any one
by looking at the map would know that it was the east
and west street, and not Huron street, that so intersects
with the old wagon road.   A notice that directs the au-
thorities of the village, clearly and unmistakably, to the
exact spot or place of the accident, is sufficient.   *Thomp-
son v. Jones,* 4 Wis. 106; *La Crosse v. Melrose,* 22 Wis. 459;
*Teegarden v. Caledonia,* 50 Wis. 292; *Fopper v. Wheatland,*
59 Wis. 623; *Wall v. Highland,* 72 Wis. 435; Elliott, Roads
& S. 475; *Cloughessey v. Waterbury,* 51 Conn. 405; *Sargent*

*v. Lynn*, 138 Mass. 599; *McCabe v. Cambridge*, 134 Mass. 484. The defendant's answer "admits that on the 21st day of June, 1888, said plaintiff gave to said defendant, and to the trustees thereof, the notice in writing in said complaint alleged." When the question of the notice came up on the trial, the court said: " It is admitted that *proper* notice was given?" The defendant's counsel replied: " Yes, sir." The learned counsel of the appellant contends, however, that these admissions did not embrace the sufficiency of the notice, because they are qualified by the statement that the notice admitted was that one "in the complaint alleged," and that that one was insufficient. The other admission, that " the *proper* notice was given," is, in effect, that a *sufficient* notice was given. But, however that may be, we think the notice was sufficient under the above authorities.

2. It is also contended that the said ditch was not an insufficiency or want of repair, in the meaning of the statute. This was a question of fact for the jury, and their verdict on that question ought not to be disturbed unless it is clearly against the evidence. It seems to me that the ditch, so situated, was an insufficiency in the street itself. Instead of grading the whole street, the village graded a mere wagon track south of its center line, barely wide enough for two teams to pass each other, and dug or left this ditch exactly in the center of the street, and as a boundary to the grading and very close to the traveled track, and so close that a slight swerving or stepping aside of the team would bring the wagon into the ditch. The bare statement of the condition of this street is sufficient to show that the ditch, taken in connection with the narrowness of the traveled track and its nearness to it, was not only an insufficiency, but a dangerous one to the traveling public. It was left entirely unguarded. It was like a bridge without a railing. The facts that the old wagon

road ended at that time at the ditch, and that the ditch, but recently dug, broke the intersection of the old wagon road with the traveled track of this street, and that the people had recently traveled by the wagon road, and teams had become accustomed to be driven by this route, make it natural and probable that a team would turn into it, or be inclined to do so, notwithstanding the ditch. It is contended by the learned counsel of the appellant that this was the case with the team of the plaintiff; that having been driven by the old wagon road at various times, and accustomed to that route, when they came to that point they attempted to turn into it of their own accord, and jumped the ditch. If this was so (and it seems probable), then the ditch by this is shown to be a still more dangerous defect and insufficiency in the east and west street.

The learned counsel contends further that the accident did not occur on the east and west street, but on the old wagon road, which was not a highway or street of the village. But the intersection of the old wagon road with this traveled track was exactly in the center of the street. The plaintiff's team did not get out of the east and west street and the accident occurred in the center of that street at the ditch. The plaintiff herself did not get further out of the traveled track than the ditch, and when the wagon struck the ditch the team was instantly turned back into the track. There was not a straying from the traveled track sufficiently to make the authorities cited by the learned counsel applicable.

The ditch was a part of the improvement of the street. It was left by scraping the earth from that point towards the center of the traveled track, and appears to have been intended as a ditch to carry off the water and protect the grading, for it extends all the way on that side to the railroad ditches. It required but very little turning to the right to bring the right wheel of the wagon into the ditch and tilt the

wagon sufficiently to throw the plaintiff out.   In *Seymer v. Lake*, 66 Wis. 651, the ditch along the side, and within two feet, of the traveled track, no deeper than this, and similarly situated and left unguarded, was held to make the highway unsafe for travel as a matter of law.   See, also, *Dreher v. Fitchburg*, 22 Wis. 675; *Chappell v. Oregon*, 36 Wis. 145; *Olson v. Chippewa Falls*, 71 Wis. 558; *Koenig v. Arcadia*, 75 Wis. 62; *Fritsch v. Allegheny*, 91 Pa. St. 226; *Hinckley v. Somerset*, 145 Mass. 326.

3. It is contended that the daughter of the plaintiff was negligent in not restraining the team from leaving the track, and that she lost control of it.   She testified that she did not at any time lose control of the team, but kept the lines taut and straight, one in each hand, and that she brought the horses back into the track instantly, as soon as she observed them turn into the ditch.   "A horse is not to be considered uncontrollable that merely shies or starts or is momentarily not controlled by his driver."   *Titus v. Northbridge*, 97 Mass. 258.

4. It is contended that the court should not have submitted to the jury the question whether the street was unsafe for travel by reason of the alleged ditch being in such close proximity to the traveled track.   That was the material question in the case.

5. It is claimed that the court erred in expressing an opinion as to where the barrier should be placed at the ditch, as a warning or defense to travelers.   That was quite immaterial, for there was no barrier there.   It may have been very proper advice to the village trustees, in order to guard against future accidents, but it was immaterial to this case, and a harmless error.

We are satisfied that the verdict was warranted and is supported by the evidence, and we can find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.